No. 804

First Circuit

---

CLOUD v. INDUSTRIAL LBR. CO.

---

(May 5, 1931. Opinion and Decree.)
(June 16, 1931. Rehearing Refused.) (Reasons Attached.)
(October 6, 1931. Writ of Certiorari and Review Refused by Supreme Court.)

---

Julius T. Long, of Shreveport, attorney for plaintiff, appellant.

Thornton, Gist & Richey, of Alexandria, attorneys for defendant, appellee.

MOUTON, J. In this case counsel for appellant has made no appearance by brief or oral argument to point out any grounds of complaint. In such cases the judgment of the district court will be affirmed on the presumption of its correctness where it is apparently sustained by the record. Traders Securities Co. v. Heartfield Allen Drug Co., 8 La. App. 518; Succession of Suner, 5 La. App. 121; Schwan v. Peterman, 123 La. 726, 49 So. 486; Saenger-Ehrlich Enterprise, Inc., v. Stephens, 10 La. App. 188, 120 So. 778.

In this case, which presents questions of fact, we have, however, gone carefully over the evidence and find that the written opinion of the district judge is fully supported by the record, and have discovered no error to warrant a reversal.

---

ON APPLICATION FOR A REHEARING
MOUTON, J. The judgment of the district court was affirmed by us on the presumption of its correctness, no brief having, at that time, been filed in this court for plaintiff. Since the affirmance of the judgment, the brief which had been delayed through no fault of counsel for plaintiff, has been filed herein.

In our original examination of the case we had gone over the evidence as was

stated in our original opinion and we have again gone over this record with the assistance of the brief of counsel for plaintiff.

While cutting timber for defendant company about July 28, 1928, plaintiff was struck on the left eye by a piece of flying knot or limb of a tree. By the effect of the blow he lost that eye completely and was paid compensation for 102 weeks by defendant company, being a payment in excess by the sum of $19.50 of the amount of damages due for that kind of injury.

Plaintiff alleges that the blow he received by this flying knot or piece of limb over his left eye and his forehead seriously injured his brain, nerves and both of his eyes, fractured the bones about his nose and eyes and fractured his skull in that area; that the said injury and blow caused his right eye to be impaired at once after the blow, and the said right eye has gradually grown worse and more impaired since the said blow as a result thereof. The foregoing allegations embody substantially his cause of action.

Plaintiff testifies that he was knocked over the left eye with the piece of a knot or limb, for a few minutes was blinded in both eyes, and when he got where he could see, he sat down in the shade. He says he was not cut over the eye as a result of the blow, which left a bruise but no discoloration on his head.

Wisenbacker, foreman of defendant company, saw plaintiff immediately after the accident sitting over a log, we presume in the shade where plaintiff says he had taken a seat and says that he saw the lick plaintiff had received, and that there was no bruise or blood. Dr. Mangham who was in charge of the hospital for defendant company where plaintiff was sent soon after the accident says plaintiff's left eye was red and inflamed and that

there was no evidence of any fracture of the bones of his head or nose, or injury thereto. In September, 1930, two years after the date of the accident, Dr. Rand, an expert in x-ray work, made an examination of plaintiff's head, and could find no signs of any fracture of any bones of the head and saw no scars. As to scars, however, his examination being superficial.

It is therefore safe to say that there is no evidence to support the allegation of plaintiff that the blow had fractured the bones in and about his face and fractured the skull in that area. It is on that character of injury upon which plaintiff based his averment that the blow had caused his right eye to be impaired at once, and which subsequently continued to gradually grow worse. A blow of the nature alleged certainly did not cause the subsequent injury to his right eye as by him alleged. This does not, however, preclude him from the right of recovery if the blow he did receive was not so severe as alleged but had, however, caused the weakness in his right eye of which he complains. Plaintiff says there was no effect to his right eye when he lost his left eye; that when he got warm his right eye bothered him, and he noticed a weakness in that eye about a couple of months after the accident. Plaintiff also says that after the accident he suffered from nose bleeding particularly when he got hot and before he was injured he had never experienced any such trouble or any weakness of sight or vision in his right eye. Close neighbors of the plaintiff also testify that prior to the accident, plaintiff did not suffer with such troubles.

All of that may be true but the question is as to whether or not the injury was the cause of the weak vision in plaintiff's right eye upon which is based his claim for compensation.

Dr. Rand, who made the x-ray examination, says that he found no indication of any injury to plaintiff's head or eye that could have caused his nose bleeding. He explains that this trouble, when people are overheated, will show itself in many individuals, in childhood and old age. Besides, there is no evidence, expert or otherwise, showing that this bleeding of the nose could have affected plaintiff's eyesight. Dr. Peters, ear, nose and throat specialist of Alexandria, made an examination of plaintiff in September, 1930.

He found his vision in the right eye nearly normal, about normal, and no vision in the left eye. He says the examination showed a scar in the center of the left eye which accounted for the loss of its central vision. He testifies that there was not any injury to that eye which could have had the tendency to impair the vision in the other eye. He concludes on this subject by saying that he could not find anything wrong with his right eye which could be attributable to a lick over the left eye in July, 1928. Dr. Peters was an expert called by defendant company, so were Drs. Mangham and Rand.

Dr. Simonton was sworn as an expert by plaintiff. According to his examination, plaintiff had a distance vision in his right eye of twenty-fourty, therefore defective to that extent, but his near vision, he found, to be seventy-five one hundredths, which was normal. He stated that a terrific injury to one eye causing blindness will sometimes produce sympathetic blindness in the other. There was no terrific injury suffered by plaintiff in this case, although it is true that he lost his left eye. Dr. Simonton was asked the following question: "Well, suppose this, if it should be shown in this case that this man's sight was good in both eyes, especially in the eye he now has, before this injury, and there is nothing else to show why it was impaired, wouldn't you consider it would be reasonable to attribute to it that the injury had something to do with it?" Answer: "It is possible; yes, sir." He repeats that it would be possible, if he had had a severe lick on the head, and one eye had been put out.

Here, the lick was not severe, as there was no cut on the head, only a sore spot, a mere bruise from which had not resulted any discoloration. Even if a severe blow had been inflicted upon which was predicated the hypothetical question to Dr. Simonton, expert witness for plaintiff, the answer of the physician was that the weakness of the good eye might possibly be the result of the blow. Hence, the answer is of the possibility of such a result, and which it seems did not fall within the line of probabilities. The examination of Dr. Simonton was made in August, 1930; that of Dr. Peters, for defendant, in September, 1930, when the right eye of plaintiff must have been in practically the same condition. Dr. Peters, being questioned on the same subject, says that the weakness of plaintiff's right eye could not be attributed to the lick he had received on his left eye. His answer is positive to the effect that there was no evidence whatever that this lick had influenced the weakened condition of the right eye.

Dr. Simonton said it was possible that the right eye had been affected by the blow plaintiff had received on his left eye, while Dr. Peters was of the positive opinion that no such effect could have resulted therefrom. From the testimony of Dr. Simonton we cannot say that such a result was even probable, while, we must, should we accept Dr. Peters' opinion, conclude that such a result would have been

an impossibility. It is therefore safe to say that plaintiff has, from the expert testimony in the case, failed to even make his cause of action probable. The proof shows that plaintiff had a tonsilar affection when the examinations were made, and on this point, Drs. Simonton and Peters happen to agree. Dr. Simonton says that infected tonsils, just as any other local infection in any part of the body, may cause weakness of the eyes. In this particular case, he remarks, however, that he could not say that it was the cause. Dr. Peters said on this subject that a tonsilar infection might have accounted for the condition of plaintiff's eye, but that he did not really think that it was the cause. A correct analysis of the testimony of these two experts, on that subject, shows that there was, if not a probability, at most a possibility, that the trouble in plaintiff's right eye was caused by his infected tonsils. According to the testimony of the two physicians there was less probability that the condition of that eye was the result of the lick plaintiff had received on the other eye. At most, there exists a possibility that the trouble in plaintiff's eye was the result either of the injury to his left eye suffered in 1928 or to the diseased condition of his tonsils. The question arises to which of the two causes the weakness of that eye must be ascribed. The experts could not say and in a case of this character, we must, take them as our guide, unless the evidence is of such a nature that the court must conclude otherwise. There is no such evidence in this record, and we must conclude that plaintiff has failed to prove his case with legal certainty, which is fatal to his claim for compensation.

His demand was properly rejected, and the amount in reconvention was correctly allowed. Rehearing refused.